# United States District Court
# District of Massachusetts

|                                                           |   |                        |
|-----------------------------------------------------------|---|------------------------|
| JANE DOE, by and through her friend, KIM PIKE, Plaintiff, | ) |                        |
| v.                                                        | ) | CIVIL ACTION           |
|                                                           | ) | No. 17-40021-TSH       |
| BARBARA PIKE, Defendant/Third-Party Plaintiff,            | ) |                        |
| v.                                                        | ) |                        |
| KIM PIKE and BRIAN MCCORMICK, Third-Party Defendants.     | ) |                        |

## ORDER
### September 25, 2019

**HILLMAN, D.J.**

### Background

John Pike ("J. Pike") sexually assaulted his granddaughter, Plaintiff Jane Doe, multiple times between 2007 and 2010. Jane Doe sued J. Pike for those assaults in this Court. Default judgment was entered against J. Pike and Jane Doe was awarded damages. Jane Doe, by and through her friend, Kim Pike ("Plaintiff") now brings claims for negligent supervision (Count I) and negligent infliction of emotional distress (Count II) against her grandmother, Barbara Pike ("B. Pike" or "Defendant"). The gravamen of Plaintiff's claim is that B. Pike either was, or should have been, aware of J. Pike's abusive behavior, and should have taken steps to prevent it. B. Pike

has filed a Third-Party Complaint against Kim Pike and Brian McCormick, Jane Doe's parents, alleging claims for contribution.

B, Pike has provided Plaintiff with a report by a Dr. Renee Sorrentino ("Dr. Sorrentino") which includes "an expert opinion regarding [J. Pike's] behavior toward his granddaughter … and whether [B. Pike] had any knowledge about her husband's sexual offending behavior." Plaintiff moves to exclude Dr. Sorrentino's report and testimony for violations of Federal Rules of Evidence 702 and 403. B. Pike has filed a motion for summary judgment contending that she is entitled to judgment on Plaintiff's claims as a matter of law because she did not owe Jane Doe a duty of reasonable care. B.Pike has also filed a motion to strike portions of the Plaintiff/Third Party Defendants' statement of facts.

This Order addresses Plaintiff's Motion To Exclude The Expert Testimony Of Dr. Renee Sorrentino (Docket No. 46) and Defendant, Barbara Pike's Motion To Strike Portions of Plaintiff and Third-Party Defendants' Local Rule 56.1 Statement (Docket No. 72). For the reasons set forth below, Plaintiff's motion to exclude expert testimony is *granted,* in part, and *denied*, in part. As to some issues, the Court will reserve ruling until trial. The motion to strike, which was filed under seal[1], is *denied* for the reasons set forth in the Plaintiff's opposition, which I find persuasive. The Court will apply these rulings when considering the motion for summary judgment, which remains pending.

**Standard of Review**

"[T]he district court serves as the gatekeeper for expert testimony by ensuring that [it] ... both rests on a reliable foundation and is relevant to the task at hand." *Milward v. Rust-Oleum*

---

[1] While leave of court was granted to file the motion to strike under seal, I will note that B. Pike could have *and should have*, drafted the motion itself in such a way as to exclude all confidential/private information so that it could be filed on the public docket-- only the supporting memorandum should be sealed.

*Corp.*, 820 F.3d 469, 473 (1st Cir. 2016), quoting *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597, 113 S.Ct. 2786 (1993) (internal quotation marks omitted). "A district court enjoys substantial discretion to decide whether to admit or exclude relevant expert testimony." *Pages-Ramirez v. Ramirez-Gonzalez*, 605 F.3d 109, 115 (1st Cir. 2010) (internal citations and quotation marks omitted). In deciding whether to admit expert testimony, the court must consider

> 1) whether or not the proposed expert is qualified by knowledge, skill, experience, training, or education; 2) if the proposed subject matter of the expert opinion properly concerns scientific, technical, or other specialized knowledge; and 3) whether the testimony is helpful to the trier of fact, *i.e.*, whether it rests on a reliable foundation and is relevant to the facts of the case.

*Bogosian v. Mercedes-Benz of N. Am., Inc.*, 104 F.3d 472, 476 (1st Cir. 1997) (internal citations and quotation marks omitted).

> The fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is whether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved.

*United States v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995) (internal citations and quotation marks omitted).

"Evidence, even if it passes the requirements of Rule 702, remains subject to Rule 403's balancing test." *United States v. Tetioukhine*, 725 F.3d 1, 6 (1st Cir. 2013). *See also United States v. Rodriguez-Estrada*, 877 F.2d 153, 155 (1st Cir. 1989) ("If the evidence brings … unfair prejudice or a cognizable risk of confusing the jury, and [the risk] substantially overbalances any probative value, then the evidence must be excluded."). Because experts can easily sway juror's opinions, courts must be especially vigilant in preventing expert testimony from "intrud[ing] into areas that jurors … are uniquely competent to judge." *United States v. Pires*, 642 F.3d 1, 12 (1st Cir. 2011); *See also Daubert*, 509 U.S. at 595, 113 S. Ct. 2786 ("[e]xpert evidence can be both powerful and

3

quite misleading"). "Evidence is generally deemed unfairly prejudicial if it has an undue tendency to prompt a decision by the factfinder on an improper basis." *United States v. Benedetti*, 433 F.3d 111, 118 (1st Cir. 2005).

## **Discussion**

### Dr. Sorrentino's Report

The expert report ("Report") prepared by Dr. Sorrentino is approximately thirty-one (31) pages long. The first five pages summarize Dr. Sorrentino's qualifications, the purpose of the Report, and the sources used to prepare the Report. The next seven pages summarize Dr. Sorrentino's individual interviews with J. Pike and B. Pike, followed by a fifteen page "summary of records," containing information drawn from police records, disclosure documents, and prior depositions. The last six pages describe Dr. Sorrentino's answers to four questions posed by B. Pike's counsel, and her rationale for those answers. The Report concludes with a bibliography, and three attached exhibits: Dr. Sorrentino's CV, her engagement agreement with defense counsel, and list of cases where she has testified. The four opinions, and the discussion supporting them, are the contested portions of the Report.

### Compliance with Federal Rules

Plaintiff argues the Report violates the Federal Rules of Civil Procedure which require expert witnesses to submit a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." *See* Fed.R.Civ.P 26(a)(2)(B)(i); *See also, Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 59 (1st Cir. 2001) ("A party retaining an expert must also submit … a detailed report covering … the expert's qualifications, the gist of his opinion, and the sources of information underlying that opinion."). The expert witness's report is meant to "minimize the expense of deposing experts … shorten direct examination and prevent an ambush

at trial." *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001). In evaluating whether a report violates Rule 26, the Court must consider "the ability of the [opposing party] to formulate a response." *Jackson v. United States*, 708 F.3d 23, 31 (1st Cir. 2013). "In ruling upon a motion to exclude expert testimony, the trial court must bear in mind the intent of the disclosure rules to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." *Diomed, Inc. v. AngioDynamics, Inc.*, 450 F.Supp. 2d 130, 136–37 (D.Mass. 2006) (quoting *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004)) (internal quotation marks omitted). Courts have allowed witnesses to testify where omissions in the expert report were "substantially justified or … harmless." *Jackson*, 708 F.3d at 31. "Substantially justified [means] … justified to a degree that could satisfy a reasonable person." *AVX Corp. v. Cabot Corp.*, 252 F.R.D. 70, 78–79 (D. Mass. 2008) (internal citations and quotation marks omitted). *See, e.g. Diomed*, 450 F. Supp. 2d at 137 (finding insufficient prejudice where defendants were alerted to expert's theory from initial report and deposition); *Gay v. Stonebridge Life Ins. Co.*, 660 F.3d 58, 63 (1st Cir. 2011) (finding report "adequately presaged [doctor's] testimony" where it "indicate[d] the general boundaries of his direct examination and … put plaintiff on notice [about substance of testimony]."); *but see, Ortiz-Lopez*, 248 F.3d at 35 (finding Rule 26 violation where plaintiff failed to correct expert report despite repeated notice that report was deficient); *AVX Corp.*, 252 F.R.D. at 79 (finding inability to obtain data in limited time frame insufficient to justify failure to provide damages calculation); *Santiago-Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D.*, 456 F.3d 272, 276 (1st Cir. 2006) (finding Rule 26 violation where expert's report was "two conclusory paragraphs," with significant omissions, provided seven months after close of discovery).

B. Pike contends that Report puts the Plaintiff on notice that Dr. Sorrentino will testify about paraphilia, intra-family sexual abuse, and hindsight bias, and that Plaintiff has ample time to find rebuttal witnesses or otherwise prepare for Dr. Sorrentino's testimony. Essentially, Defendant argues that the Report offers "the gist of [the expert's] opinion, and the sources of information underlying that opinion." *Lohnes,* 272 F.3d at 59; *See also Torres v. Mennonite Gen. Hosp. Inc.*, 988 F. Supp. 2d 180, 186 (D.P.R. 2013) (finding no Rule 26 violation where plaintiff timely provided defendant with expert's "credentials, expert designations and … medical opinion"). Defendant further argues that Rule 26 does not require greater any detail and therefore, Dr. Sorrentino's report complies therewith. Consequently, Plaintiff is unlikely to suffer undue surprise from the report or Dr. Sorrentino's testimony.

Application of the Rules

*Dr. Sorrentino's Qualifications*

A "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Fed. R. Evid. 702. Dr. Sorrentino is a board-certified forensic psychiatrist with a medical degree from Boston University School of Medicine. She is the Medical Director at the Institute for Sexual Wellness and Clinical Assistant Professor at Harvard Medical School. Her clinical practice is devoted to the treatment and evaluation of paraphilias[2] and sexual offenders. She consults with local and state agencies to provide evaluation and treatment to individuals who engage in problematic sexual behaviors. Dr. Sorrentino has authored book chapters and journal articles in the areas of general forensic psychiatry as well as paraphilic disorders. She has spoken both nationally and internationally on

---

[2] "A pattern of recurring sexually arousing mental imagery or behavior that involves unusual and especially socially unacceptable sexual practices (such as sadism or pedophilia)." https://www.merriam-webster.com/dictionary/paraphilia

the topic of paraphilia. Dr. Sorrentino has testified on over one hundred occasions on issues involving sexual abuse, including intra-family sexual abuse. Plaintiff does not dispute that Dr. Sorrentino is qualified and based on the record, I find that Dr. Sorrentino's knowledge, skill, experience, and education qualify her as an expert.

*The Admissibility of Testimony Regarding Grooming Behaviors*

In the Report, Dr. Sorrentino discusses "sexual grooming," a term that refers to the behaviors that a sexual abuser employs in preparation for sexually abusing a child, in other words, a sexual abuser's *modus operandi*. Plaintiff argues that Dr. Sorrentino's opinion in this regard is unreliable and unhelpful to the jury. I disagree.

Courts have generally recognized that expert testimony regarding sexual abusers' *modus operandi* can assist the jury. *See, e.g.*, *United States v. Alzanki*, 54 F.3d 994, 1006 (1st Cir. 1995) (permitting testimony of sexual abuse specialist as to general behavior of abuse victims); *United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999) (finding expert testimony "was helpful to the jury in understanding how child molesters operate—something with which most jurors would have little experience."); *United States v. Batton*, 602 F.3d 1191, 1200–01 (10th Cir. 2010) (permitting testimony to "dispel any of the juror's misconceptions" about sex offenders); *United States v. Hitt*, 473 F.3d 146, 158 (5th Cir. 2006) (finding no abuse of discretion where trial court permitted "testimony regarding the methods by which sexual abusers of children typically operate."). Where such testimony has been excluded, it has been because of the qualifications of the expert, not the substance of the testimony. *See, e.g. United States v. Raymond* 700 F. Supp. 2d 142, 149 (D. Me. 2010) (barring testimony where officer used a "subjective, conclusory approach that [could not] be reasonably assessed for reliability."); *United States v. Gonyer,* No. 1:12-CR-00021-JAW, 2012

WL 3043020, at *3 (D. Me. July 24, 2012) (barring testimony that was based primarily on witness's personal experience, rather than research and professional publications).

Understanding how abusers conceal their behavior is highly probative and relevant to the instant case. The jury must assess the credibility of B. Pike's claim that she was unaware of her husband's abusive behavior. Dr. Sorrentino's discussion of "grooming" and her related opinion is based upon peer reviewed literature and studies. Her methods are in keeping with the standards of the medical profession. Her anticipated testimony on the *modus operandi* of child molesters may be valuable to the jury and, at this stage of the proceedings, I find that it is admissible. Accordingly, Plaintiff's motion to strike the same is denied.

*The Admissibility of Testimony Regarding Hindsight Bias*

In the Report, Dr. Sorrentino also discusses "hindsight bias," which is defined as the tendency for individuals with outcome knowledge (hindsight) to claim they would have estimated a probability of occurrence for the reported outcome that is higher than they would have estimated in foresight (without the outcome information).

The concept of hindsight bias has been recognized by numerous courts. *See, e.g.*, *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421, 127 S. Ct. 1727 (2007) ("A factfinder should be aware … of the distortion caused by hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning."); *Oxford Immunotec Ltd. v. Qiagen, Inc.*, 271 F. Supp. 3d 358, 366 (D. Mass. 2017) ("Court is reminded that … it must avoid hindsight bias and must be cautious of arguments reliant upon *ex post* reasoning.") quoting *Arendi S.A.R.L. v. Apple Inc.,* 832 F.3d 1355, 1361 (Fed.Cir. 2016)); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 609 (D. Mass. 2016) ("Human memories … are readily susceptible to such factors as hindsight bias … and suggestibility."); *Bos. Gas Co. v. Bd. of Assessors of Bos.*, 458 Mass. 715, 732, 941 N.E.2d 595, 611 (2011) ("[E]vidence can be

used, where its probative value is not outweighed by the risk of hindsight bias or other factors …"). Moreover, while the judiciary has often taken note of the existence of hindsight bias, it is highly questionable whether a lay juror would have such knowledge.

The question of hindsight bias is relevant to this case. Plaintiff contends that B. Pike should have known about J. Pike's abuse based on his behavior. It would be helpful for jurors to understand how perceptions of past events can be influenced by current knowledge when evaluating this claim. However, I need to hear facts within the context of the trial and therefore, will reserve making a final ruling until trial.

*Admissibility of Opinion Regarding J. Pike's Conduct*

In the Report, Dr. Sorrentino opines that:

> It is my opinion with reasonable medical certainty that Mr. John Pike's sexually abusive behaviors … were conducted in a manner to evade detection of everyone, including his wife, his children and other third parties.

While Dr. Sorrentino does not use the word "intent," her conclusions about J. Pike's behavior nevertheless speak directly to his intent. "A party's intent or state of mind is not the proper subject of expert testimony." *OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Canada*, 804 F. Supp. 2d 77, 85 (D. Mass. 2011), *aff'd,* 684 F.3d 237 (1st Cir. 2012); *accord Williams v. Poulos*, 11 F.3d 271, 282, n.20 (1st Cir. 1993); *Holmes Grp., Inc. v. RPS Prod., Inc.*, No. CIV.A. 03-40146-FDS, 2010 WL 7867756, at *5 (D. Mass. June 25, 2010).  At the same time, determinations of intent are among the most difficult a jury must make. Jurors often infer intent from circumstantial evidence. "In many cases, a criminal defendant's knowledge or purpose is not established by direct evidence but instead is shown circumstantially based on inferences drawn from evidence of effect." *Regalado Cuellar v. United States*, 553 U.S. 550, 567, 128 S. Ct. 1994, n.8 (2008); *See also Mullaney v. Wilbur*, 421 U.S. 684, 702, 95 S. Ct. 1881 (1975) (noting intent

"may be established by adducing evidence of the factual circumstances surrounding the commission of the [crime]."); *United States v. Castro-Davis*, 612 F.3d 53, 60 (1st Cir. 2010) ("The requisite knowledge and intent can be proven through circumstantial evidence, including inferences from acts committed by the defendant."); *Com. v. Correia*, 381 Mass. 65, 83, 407 N.E.2d 1216 (1980) ("Where intent is a necessary element of the crime charged … the jury are permitted … to infer the element of criminal intent from the circumstances."). For the reasons set forth below, balancing these competing interests, I find that Dr. Sorrentino's opinion regarding the manner in which J. Pike conducted his sexually abusive behavior is not admissible.

     Dr. Sorrentino's opinion is based in part on interviews she conducted with J. Pike, as well as transcripts of statements J. Pike made to law enforcement officers and other officials during the earlier investigation. While this is precisely the sort of evidence the jury should consider when evaluating J. Pike's behavior, no expertise is required to read transcripts or hear testimony. J. Pike has been deposed and is apparently available and willing to testify. Allowing Dr. Sorrentino to opine upon the testimony of an available witness invades the fact-finding responsibilities of the jury. Whether J. Pike's testimony demonstrates that his behavior was calculated to avoid detection is precisely the sort of determination the jury must make based upon the available facts. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions."); *Lucio v. Levy Envtl. Servs. Co.*, 173 F. Supp. 3d 558, 565 (N.D. Ohio), *aff'd,* 670 F. App'x 889 (6th Cir. 2016) ("The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury."). Because Dr. Sorrentino's testimony would usurp the jury's

role as factfinder, she will not be permitted to testify about Mr. Pike's efforts to conceal his behavior.

*Admissibility of Opinion of B. Pike's Knowledge of J. Pike's Conduct*

In another opinion in the Report, Dr. Sorrentino reaches the following conclusion regarding B. Pike's knowledge of J. Pike's conduct:

> It is my opinion with reasonable medical certainty that Mrs. Pike did not have knowledge of Mr. Pike's sexually abusive behavior … prior to [victim's] disclosure in 2014.

Dr. Sorrentino's opinion is based upon a combination of expert information from peer reviewed sources, and first-hand information taken from interviews with B. Pike, transcripts of police reports, and other official documents. This opinion speaks directly about B. Pike's knowledge.

"[A] witness, under the guise of giving expert testimony, [cannot] become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." *Trustees of Bos. Univ. v. Everlight Elecs. Co.*, 141 F. Supp. 3d 147, 149 (D. Mass. 2015); *United States v. Cormier*, 468 F.3d 63, 73 (1st Cir. 2006) ("[A]n expert witness may not simply summarize the out-of-court statements of others as his testimony.") (internal citations omitted); *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014) ("[A]n expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy."). Dr. Sorrentino's opinion, as to which she would presumably testify, is based entirely upon B. Pike's own statements. B. Pike can testify directly to the jury, and the jury can make their own determinations as to her knowledge and credibility. *See, e.g. Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. at 150, 120 S. Ct. 2097. Dr. Sorrentino will not be permitted to testify as this opinion.

*Admissibility of Opinion Regarding B. Pike's Decision to Remain with J. Pike*

In the Report, Dr. Sorrentino gives two opinions concerning B. Pike's decision to remain married to J. Pike after learning that he had sexually abused their granddaughter.

> It is my opinion with reasonable medical certainty that Mrs. Pike's decision to remain with Mr. Pike after he disclosed that he sexually abused [victim] does not indicate that Mrs. Pike had knowledge of his sexually abusive behavior.

> It is my opinion with reasonable medical certainty that Mrs. Pike's decision to remain with Mr. Pike after he disclosed that he sexually abused [victim] does not indicate that Mrs. Pike had knowledge of his sexually abusive behavior.

Plaintiff argues that these opinions impermissibly opine on B. Pike's state of mind. For the reasons set forth below, I disagree. Dr. Sorrentino's opinion is again based on a combination of interviews with B. Pike and expert knowledge. However, I find that these opinions address inferences an outside observer might draw between B. Pike's behavior (remaining with her husband), and the implications of that behavior (that B. Pike *must* have known about, and tacitly or explicitly condoned the behavior). Dr. Sorrentino's testimony regarding the scientific literature (or lack thereof) on, and her own clinical experiences working with, women who chose to remain with their sex offending partners, are founded on peer reviewed literature and expert knowledge. Further, such testimony may be helpful to the jury as it is valuable in rebutting the potential inference that B. Pike's decision to remain with her husband because she must have known about and condoned his behavior. Courts have allowed expert testimony where it was deemed necessary to help the jury understand victim behavior. *See, e.g. United States v. Young*, 316 F.3d 649, 657–58 (7th Cir. 2002) (affirming admission of expert testimony because a "jury naturally would be puzzled" by victim's behavior); *United States v. Johnson*, 860 F.3d 1133, 1140–41 (8th Cir. 2017) (finding expert testimony about how individuals react to sexual abuse "helps jurors evaluate … victim's behavior"). That being said, Dr. Sorrerntion will not be permitted to testify as to what B.

Pike told her as to why she remained with J. Pike. With respect to her understanding of B. Pike's decision to stay with J. Pike, I will reserve making a final ruling until trial.

## Conclusion

(1) Plaintiff's Motion To Exclude The Expert Testimony Of Dr. Renee Sorrentino (Docket No. 46) is **_granted_** in part, and **_denied_**, in part as provided in this Order; and

(2) Defendant, Barbara Pike's Motion To Strike Portions of Plaintiff and Third-Party Defendants' Local Rule 56.1 Statement (Docket No. 72) is **_denied_**.

**SO ORDERED**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN
DISTRICT JUDGE**